UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                                Chapter 11

      73 Empire Development LLC                          Case no.  19-22285

                       Debtor.

----------------------------------------------------------x

## <u>DISCLOSURE STATEMENT</u>

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## <u>INTRODUCTION</u>

1.      The Debtor submits this Disclosure Statement ("Disclosure Statement") to explain its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as Exhibit A.  All Creditors are urged to review the Plan, besides reviewing this Disclosure Statement.  All capitalized terms used but not defined shall have the meaning set forth in the Plan.

2.      This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan to explain the terms and implications of the Plan.  Every effort has been made to fully explain the aspects of the Plan as it affects all Creditors.  To the extent a Creditor has questions, the Debtor urges you to contact its counsel and every effort will be made to assist you.

3.      On _____, 2019, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Creditors to make an informed judgment on the Plan.

4.      EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.

2

5.      Creditors should read this Disclosure Statement in its entirety prior tovoting on the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement.

6.      THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR.  THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTOR NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

7.      The Bankruptcy Court has entered an Order fixing _____, 2019, at ____.m., at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008, as the date, time and place for the hearing on confirmation of the Plan, and fixing _____, 2019, as the last date for the filing of any objections to confirmation of the Plan.

## **BACKGROUND**

8.      On February 21, 2019, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

9.      The Debtor owns a ground lease ("Ground Lease") dated December 16, 2013 on the real property at 73 Empire Boulevard, Brooklyn, New York 11225 (the "Property"). The Property is a 30,000 square foot development site, pictured below:



10.      The initial term of the Ground Lease expires in 2062. The ground lessor is MDL Equipment. Development LLC ("Ground Lessor").  Based on discussions with real estate investors, the Debtor believed the value of the Ground Lease is about $6,000,000.

11.      The Ground Lease is triple net under section 2.2, and section 4.2 requires the Debtor to spend no less than $3,000,000 to build a retail only or mixed-use building (the "Improvements"). Initially, the Debtor retained two architects, a demolition and construction company, an expeditor, a structural engineer, a surveying service and zoning counsel, and expended approximately $500,000 to implement the Improvements. The Debtor also obtained financial assurances from investors who agreed to provide the financial capital to complete the Improvements.

12.     Section 4.6(viii) of the Ground Lease required the Debtor to complete

construction within 30 months, by June 2016.  The Ground Lessor, however, did not initially

insist upon completion by the deadline – until the Ground Lessor's principal passed away and

control was transferred to his children.

13.     The Ground Lease does not contain a "time is of the essence" provision

for the Improvements. And the Improvements could not be completed within 30 months, much

less 30 days.  The Ground Lessor waited two years in which to purportedly invoke its rights

under the Ground Lease.  The Debtor believes this to be a waiver and the Landlord is estopped

from demanding immediate performance.

14.     The Debtor's goal has been to complete the Improvements, but the Ground

Lessor interfered with the Debtor's funding.

15.     Under section 10 of the Ground Lease, the Debtor may assign or sublet the

Property with the Ground Lessor's consent, "which may not unreasonably" be withheld or

delayed.

16.     In November and December 2017, the Debtor notified the Ground Lessor

of its intention to assign the Ground Lease and, documented that the new members have a net

worth exceeding $300,000,000 and paid the required legal fee for the Ground Lessor's review.

17.     In March 2018, the Ground Lessor denied the request based on

unspecified defaults under the Ground Lease, and followed up in April 2018 with a 30 day notice

to cure, the primary default being the failure to complete construction in June 2016.

18.     Section 11.1(b) of the Ground Lease provides that upon notice of default,

the Debtor "shall commence to take steps to remedy same within thirty (30) days after Landlord

shall have given to Tenant a written notice specifying the same or having so commenced shall

thereafter fail to proceed."

19.     Here, the Ground Lessor allowed two years to pass during which it

encouraged the Debtor to invest large amounts of money in the Property.  But for the Landlord's

interference, the Debtor had the funds to cure and the contractors in place to effectuate a cure.

20.     The Ground Lessor instead attempted to terminate the Ground Lease under

New York landlord tenant law.  The Supreme Court denied the Debtor a Yellowstone injunction

and the Ground Lessor asserts that the Debtor may no longer cure.

21.     The Debtor filed this case to effectuate a cure under the Bankruptcy Code.

Specifically, under Second Circuit authority, a long-term ground lease such as the Debtor's

Ground Lease is not treated as lease under the Bankruptcy Code subject to the rules for lease

assumption.  *In re PCH Associates,* 804 F.2d 193 (2d. Cir. 1986).

22.     Since filing this case, the Debtor's principals have consulted with new

professionals who advised that the Debtor that it could improve on its initial construction plan to

retain much of the existing structure.  Instead, the Debtor should demolish the structure and build

a new two-story retail building.  The Debtor projects that it will take 18 months to complete

demolition and another 18 months to complete construction.  The Debtor estimates that the soft

and hard cost through the completion of demolition will be $2,232,500, and that once demolition

is complete, construction financing will be available to complete the project.  $2,965,000 is on

deposit in Signature Bank on behalf of the Debtor's equity holders to fund the Plan and the first

18 months of costs.

6

## DEBTOR'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1

23.    **Classification** – New York City real estate tax and other Liens.  Claims total approximately $0.00

24.    **Treatment** -- Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

25.    **Voting** – Unimpaired and deemed to have accepted the Plan.

### Class 2

26.    **Classification** – MDL Equipment. Development LLC.  The Debtor estimates that pre-petition monetary Ground Lease arrears total $99,000, and that the Debtor has a non-monetary cure obligation to spend no less than $3,000,000 to build a retail only or mixed-use building on the Property.

27.    **Treatment** –Pursuant to section 1124 of the Bankruptcy Code, the Debtor shall cure all pre-petition and post-petition monetary arrears on the Effective Date, and cure the Debtor's non-monetary obligations pursuant to the outline annexed to the Plan as Exhibit A.  If the Ground Lease is determined to be an Executory Contract, such cure shall satisfy the Debtor's cure obligation to assume the Ground Lease under section 365 of the Bankruptcy Code.

28.    **Voting** – Unimpaired and deemed to have accepted the Plan..

## Class 3

29.     **Classification** –   Priority Claims under Sections 507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Claims total approximately $0.

30.     **Treatment** – Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

31.     **Voting --** Unimpaired and deemed to have accepted the Plan..

## Class 4

32.     **Classification** – General Unsecured Claims.  Claims total approximately $2,741,619 held by Chaskeil Strulovithch and Irving Starr LLC.

33.     **Treatment** – Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment.  Mr. Strulovitch is a principal of the Debtor's 80% member.  He and Irving Starr LLC have agreed to defer payment until construction is complete and payment can be made from net operating income.

34.     **Voting** – . Unimpaired and deemed to have accepted the Plan..

## Class 5

35.     Classification – Interests Holders.

36.     Treatment – Entitled to ownership of new Interests on account of payment of $2,965,000 to fund the Plan.

37.     **Voting –** Impaired and entitled to vote to accept or reject the Plan.

8

## UNCLASSIFIED PRIORITY TAX CLAIMS

38.     Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0. The treatment of such Claims, if any, shall be payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

39.     Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtor estimates that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately $75,000 plus litigation legal fees, if any, and such $75,000 amount shall be escrowed for payment until Allowed, and then paid in the amount Allowed.

40.     Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date.  Thereafter, United States Trustee fees and any statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed.  The Debtor shall file quarterly post-confirmation operating reports.

## **MEANS FOR IMPLEMENTATION**

41.    **Source of Funds** – Effective Date payments under the Plan will be paid from capital to be contributed by the Interest Holders.  The Interest Holders will have caused $2,965,000 to be placed on deposit in Signature Bank to fund Effective Date payments. Post Confirmation, the capital contributed will be used to fund soft costs and demolition of the Property.  Construction financing will fund construction.  Net operating income will fund post-construction expenses, as set forth on Exhibit A to the Plan.

42.    **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

43.    **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

44.    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

10

45.   **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate, provided, however, that the Debtor shall have sole authority for prosecuting any such claims.

46.   **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

47.   **Release of Liens** – Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or

such Lien shall automatically, and without further action by the Debtor be deemed released, and

(y) execute such documents and instruments as the Debtor requests to evidence such Claim

holder's release of such property or Lien.

## LIQUIDATION ANALYSIS

48.    In a liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's

assets would be sold and the sale proceeds distributed to creditors in their order of priority.  The

Debtor believes that the Plan provides at least an equivalent return for the Debtor's estate as

could be achieved in a liquidation.  As set forth on Exhibit B hereto, the Debtor projects that in a

Chapter 7 liquidation, the return to the Debtor's estate would be reduced by an additional layer

of administration legal expenses and commissions, which the Debtor estimates would total at

least 15% of the sale proceeds.  Similarly, in a liquidation, there would be no capital contribution

from Interest Holders.

## LITIGATION ANALYSIS

49.    The Debtor's schedules reflect no disbursements within the preference

period, nor any distributions to insiders within the past year. The Debtor is aware no litigation

with third parties, except (a) the Ground Lessor's eviction action which the Debtor believes will

be moot upon assumption of the Ground Lease under the Plan and (b) a pending slip and fall

case.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

50.    The Debtor shall be disbursing agent under the Plan without a bond.  The

Debtor reserves the right to file objections to Claims in the event grounds exist to object to

particular Claims, for a period of 60 days after the Effective Date.  On the initial distribution date

and on each distribution date as may thereafter be necessary, the Debtor shall maintain a

Disputed Claim Reserve for the holders of Disputed Claims as of such date in a sum not less than

the amount required to pay each such Disputed Claim under the Plan if such Claim was Allowed

in full.  To the extent that a Disputed Claim becomes an Allowed Claim, the distributions

reserved for such Allowed Claim, shall be released from the Disputed Claim Reserve and paid to

the holder of such Allowed Claim.  After all the amounts of all Disputed Claims have been fixed,

the balance of the Disputed Claim Reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

51.     If it is determined to be an Executory Contract, the Debtor shall assume

the Ground Lease on the Effective Date pursuant to the Ground Lessor's treatment as a Class 2

Claimant.  Except for Executory Contracts that the Debtor assumes before the Confirmation

Date, all other Executory Contracts shall be rejected under the Plan on the Effective Date

pursuant to sections 365 and 1123 of the Bankruptcy Code.  In the event of a rejection which

results in damages, a proof of Claim for such damages must be filed by the non-Debtor party

with the Court on or before sixty (60) days after the Effective Date. All Allowed Claims arising

from the rejection of any Executory Contract shall be treated as Unsecured Claims.  Any Claim

arising from the rejection of any Executory Contract not filed with the Court within the time

period provided herein shall be deemed discharged and shall not be entitled to participate in any

distribution under the Plan.

## FINANCIAL PROJECTIONS

52.     Annexed to Plan as Exhibit A is the Debtor's post-confirmation business

plan for demolition and construction.

13

## MANAGEMENT OF THE DEBTOR

53.    The Debtor is managed by David Goldwasser, as authorized signatory of GC Realty Advisors, LLC, as Managing Member.  Post-confirmation management shall remain unchanged.

## TAX CONSEQUENCES

54.    The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

55.    THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

## VOTING PROCEDURES AND REQUIREMENTS

56.    Since all creditor classes are unimpaired, there will be no voting on the Plan.

## CRAMDOWN

57.    Since all creditor classes are unimpaired, a cramdown analysis is immaterial.

14

## CONFIRMATION OF THE PLAN

58.    Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

59.    By order of the Bankruptcy Court dated _____, 2019, the Confirmation Hearing has been scheduled for _____, 2019, at ___ .m., in the Honorable Robert D. Drain's Courtroom, United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____, 2019 at 5:00 p.m.:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York  10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

60.    At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are as follows:  (a)  The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any payment made or promised or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the

Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made

before the confirmation of the Plan is reasonable, or if such payment is to be fixed after

confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as

reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed

to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an

affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under

the Plan, and the appointment to, or continuance in, such office of such individual, is consistent

with the interests of Creditors and equity security holders and with public policy, and the Debtor

has disclosed the identity of any insider that will be employed or retained by the reorganized

Debtor, and the nature of any compensation for such insider, (f) with respect to each class of

impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or

will receive or retain under the Plan on account of such Claim or interest property of a value, as

of the Effective Date of the Plan, an amount that is not less than the amount that such holder

would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the

Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not

impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed

to a different treatment of such Claim, the Plan provides that Administrative Expenses and

priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims

has accepted the Plan, determined without including any acceptance of the Plan by any insider

holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the

liquidation, or the need for further financial reorganization of the Debtor or any successors to the

Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

16

61.     The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

## **CONCLUSION**

The Debtor urges the Debtor's Creditors to support the Plan.

Dated: New York, New York
       May 2, 2019

73 Empire Development LLC
Debtor and Debtor in Possession

By:     s/ David Goldwasser, as authorized
signatory of GC Realty Advisors, LLC, as
Managing Member

**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for Debtor**

By:     s/Mark Frankel
        800 Third Avenue
        New York, New York 10022
        (212) 593-110

17

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                                        Chapter 11

       73 Empire Development LLC                    Case no.  19-22285

                       Debtor.
----------------------------------------------------------x


## **PLAN OF REORGANIZATION**


Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Fascimile: (212) 644-0544


ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

73 Empire Development LLC ("Debtor"), proposes this Plan of Reorganization to its Creditors.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

62.     "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code.

63.     "Administrative Expense Claim" shall mean a claim for payment of an Administrative Expense.

64.     "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

65.     "Allowed Amount" shall mean the amount of a Claim:  (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

2

66.    "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

67.    "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

68.    "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

69.    "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

70.    "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.

71.    "Bankruptcy Court" shall mean the Court as defined below.

72.    "Bar Date" shall mean _____ .

73.    "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

74.    "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

75.    "Claimant" shall mean the holder of a Claim.

76.    "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

3

77. "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

78. "Confirmation Order" shall mean the order of the Court confirming the Plan.

79. "Court" shall mean the United States Bankruptcy Court for the SOUTHERN District of New York.

80. "Creditor" shall mean any entity that holds a Claim against the Debtor.

81. "Debtor" shall mean 73 Empire Development LLC.

82. "Disputed Claim" shall mean the whole or any portion of any Claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

83. "Disputed Claim Reserve" shall mean funds to be held in reserve by the Debtor for Disputed Claims.

84. "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date no later than 60 days after the Confirmation Date as may be practicable.

85. "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

86. "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

4

87.    "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

88.    "Ground Lease" shall mean that certain ground lease for the Property between the Debtor and the Ground Lessor for the Property, dated December 16, 2013 and expiring in 2062.

89.    "Ground Lessor" shall mean MDL Equipment. Development LLC.

90.    "Impaired" shall mean not Unimpaired.

91.    "Interest" shall mean an existing ownership interest in the Debtor.

92.    "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor. The Debtor's Interest Holders are CSRE LLC which holds 80% membership Interest and GC Realty Advisors which holds a 20% managing member Interest.

93.    "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

94.    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

95.    "Petition Date" shall mean February 21, 2019.

96.    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

97.    "Property" shall mean 73 Empire Boulevard, Brooklyn, New York 11225.

5

98.    "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

99.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

100.    "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

101.    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include Administrative Expense Claims.

102.    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION, TREATMENT AND VOTING

### Class 1

103.    Classification – New York City real estate tax and other Liens.

104.    Treatment – Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment..

105.    Voting -- Unimpaired and deemed to have accepted the Plan.

### Class 2

106.    Classification – MDL Equipment. Development LLC

6

107.    Treatment -- Pursuant to section 1124 of the Bankruptcy Code, the Debtor shall cure all pre-petition and post-petition monetary arrears on the Effective Date, and cure the Debtor's non-monetary obligations pursuant to the outline annexed to the Plan as Exhibit A.  If the Ground Lease is determined to be an Executory Contract, such cure shall satisfy the Debtor's cure obligation to assume the Ground Lease under section 365 of the Bankruptcy Code.

108.    Voting -- Unimpaired and deemed to have accepted the Plan.

**Class 3**

109.    Classification –  Priority Claims under Sections 507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code.

110.    Treatment – Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

111.    Voting -- Unimpaired and deemed to have accepted the Plan.

**Class 4**

112.    Classification -- General Unsecured Claims

113.    Treatment -- Payment in Cash on the Effective Date, of Allowed Amount of each such Claim plus interest at the Legal Rate as it accrues from the Petition Date through the date of payment.

114.    Voting -- Unimpaired and deemed to have accepted the Plan..

**Class 5**

115.    Classification – Interests Holders.

7

116.    Treatment – Entitled to ownership of new Interests on account of payment of $2,965,000 to fund the Plan.

117.    Voting – Impaired and entitled to vote to assume or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

118.    Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0. The treatment of such Claims, if any, shall be payment in full in Cash of the Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATION CLAIMS

119.    Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtor estimates that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately $75,000 plus litigation legal fees, if any, and such $75,000 amount shall be escrowed for payment until Allowed, and then paid in the amount Allowed.

120.    Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date.  Thereafter, United States Trustee fees and any

8

statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed. The Debtor shall file quarterly post-confirmation operating reports.

## MEANS FOR IMPLEMENTATION

121.    **Source of Funds** – Effective Date payments under the Plan will be paid from capital to be contributed by the Interest Holders. The Interest Holders will have caused $2,965,000 to be placed on deposit in Signature Bank to fund Effective Date payments. Post Confirmation, the capital contributed will be used to fund soft costs and demolition of the Property. Construction financing will fund construction. Net operating income will fund post-construction expense, as set forth on Exhibit A to the Plan.

122.    **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

123.    **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

124.    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all

notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly

preserved by the Plan, and the Confirmation Order.

125.    **Preservation of Claims** -- All rights pursuant to Sections 502, 544, 545

and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the

Bankruptcy Code, all fraudulent transfer claims pursuant to Section 548 of the Bankruptcy Code,

and all claims relating to post-Petition Date transactions under Section 549 of the Bankruptcy

Code shall be preserved for the benefit of the Debtor's estate; provided, however, that the Debtor

shall have sole authority for prosecuting any such claims.

126.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a)

the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of

any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of

any lease or sublease or the making or delivery of any deed or other instrument of transfer under,

pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any

deeds, bills of sale or assignments executed in connection with the purchase of the Property by

the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or

sale of any real or personal property of the Debtor pursuant to, in implementation of, or as

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness

by such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including, without limitation, the

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment.

10

127.    **Release of Liens** – Except as otherwise provided for in the Plan, (a) each

holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any

and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or

such Lien shall automatically, and without further action by the Debtor be deemed released, and

(y) execute such documents and instruments as the Debtor requests to evidence such Claim

holder's release of such property or Lien.

## DISTRIBUTIONS TO CREDITORS

128.    The Debtor shall be disbursing agent under the Plan without a bond.  The

Debtor reserves the right to file objections to Claims in the event grounds exist to object to

particular Claims, for a period of 60 days after the Effective Date.  On the initial distribution date

and on each distribution date as may thereafter be necessary, the Debtor shall maintain a

Disputed Claim Reserve for the holders of Disputed Claims as of such date in a sum not less than

the amount required to pay each such Disputed Claim under the Plan if such Claim was Allowed

in full.  To the extent that a Disputed Claim becomes an Allowed Claim, the distributions

reserved for such Allowed Claim, shall be released from the Disputed Claim Reserve and paid to

the holder of such Allowed Claim.  After all the amounts of all Disputed Claims have been fixed,

the balance of the Disputed Claim Reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS

129.    If it is determined to be an Executory Contract, the Debtor shall assume

the Ground Lease on the Effective Date pursuant to the Ground Lessor's treatment as a Class 2

Claimant.  Except for Executory Contracts that the Debtor assumes before the Confirmation

Date, all other Executory Contracts shall be rejected under the Plan on the Effective Date

11

pursuant to sections 365 and 1123 of the Bankruptcy Code. In the event of a rejection which results in damages, a proof of Claim for such damages must be filed by the non-Debtor party with the Court on or before sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as Unsecured Claims. Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## <u>RETENTION OF JURISDICTION</u>

130.    Retention of Jurisdiction. The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings:

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 28 U.S.C. §§ 1334 and 157;

- To hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtor or the Debtor's Estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtor.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## GENERAL PROVISIONS

131.   **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

132.   **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

133.   **Other Actions**.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

134.   **Modification of Plan**.  The Debtor may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND PROPERTY OF THE ESTATE

135.   **Injunction**.  Pursuant to Section 1141 of the Bankruptcy Code, the confirmation of this Plan shall constitute an injunction of the Court against the commencement

13

or continuation of any action, the employment of process, or any act, to collect, recover or offset

from the Debtor or its property or properties, any obligation or debt except pursuant to the terms

of the Plan.

## CLOSING THE CASE

136.    Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
        May 2, 2019

73 Empire Development LLC

By:    s/ David Goldwasser, as authorized signatory of GC
Realty Advisors, LLC, as Managing Member

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtor

By:    s/Mark A. Frankel
       800 Third Avenue
       New York, New York 10022
       (212) 593-1100

14

## 73 Empire Business Plan

**Property Overview:** The subject property is a 30,679 SF, 1-story retail building located in the Crown Heights neighborhood of Brooklyn. Built in 1930, the property sits on 30,119 SF lot and occupies half of the block facing Empire Boulevard, Sullivan Place and Reginald Nero's Way. The property is conveniently located to public transportation - it is 7 minutes away from B, Q, S subway lines (Prospect Park subway station), as well as in close proximity to 2, 4, 5 subway lines. The property is located near Prospect Park, Medgar Evers College, Brooklyn Botanic Garden, Kings County Hospital, Brooklyn Children's Museum, as well as countless restaurants and bars, banks and stores.

The property consists of 1 commercial unit that is currently vacant and is zoned R6, C8-2, C1-3. Facility FAR of 4.8 allows to build up to 130,000 SF.

There is a ground lease on the property, with the remaining term of 45 years. The current rental payment is $33,333.33 per month ($400,000 per annum). The lease has a 10% increase every 5 years, with the next one in 2019. The new rental payment will be $36,666.67 per month ($440,000 per annum).

**Current Project:** The Debtor is in the process of redeveloping the property into a 2-story, 58,000 SF retail property. The existing structure will be demolished and a new structure will be put in its place at the property. The project will consist of 58,000 SF of commercial space, with 53,000 SF of rentable area (27,500 SF on the ground floor and 25,500 SF on the 2nd floor). The project will have 100 parking spaces located on the roof.

The Debtor will contribute the amount of approximately $2,300,000 for the pre-development costs, which will last a period of approximately 18 months. This will include soft costs of approximately $1,200,000, carrying costs of approximately $383,000 (RE taxes & insurance) and $660,000 in ground lease payments.

| Cost | Months Reserve | Amount | $/SF |
|---|---|---|---|
| Plans & Approvals | | $1,190,000 | $20.52 |
| RE Taxes | 18 | $157,500 | $2.72 |
| Insurance | 18 | $225,000 | $3.88 |
| Ground Lease Future PMTs | 18 | $660,000 | $11.38 |
| **Total** | | **$2,232,500** | **$38.49** |

The pre-development timeline of the project is the following:

- Boring tests – 2 months;
- Architecture and structure plans – 3-4 months;
- DOB approval – 8-9 months;
- Demolition – 2 months;
- Plans approved – 3 weeks.

The Borrower has been working with the below experienced professionals in order to facilitate the process:

- Architect
  - Alexander Pustylnik (ND Architecture & Design, PC 499 Van Brunt St., #9B, Brooklyn,  New York 11231 https://www.ndarchdesign.com/ )
- Engineer
  -  Ronald J Garon PHD PE – (Titan Engineers, 1331 Stuyvesant Ave, Union, NJ 07083 https://titanengineers.com/ )
- Zoning Attorney
  - Eric Palatnik, Esq. (Eric Palatnik, P.C., 32 Broadway, Ste. 114, New York, NY 10004)

Upon the actual approval of the plans the final project will then break ground.  The total project cost is estimated to be $19,200,00 which includes $3,700,000 of costs already invested (lease payments, insurance, professional costs, etc.), $9,100,000 of hard costs ($158/SF including 5% contingency), $1,800,000 of soft costs ($30.78/SF including 5% contingency), 24 months of ground lease payments ($880,000), $2,100,000 in tenant improvements ($40/SF), and $1,600,000 in financing costs.

The project will be financed with a $12,470,000 (65% LTC) construction loan, with the Debtor contributing a total of approximately $6,700,000 of equity including monies already invested.  The project is estimated to be completed within 18-month time frame from the construction start. The property is projected to generate the NOI of $1,560,000 (including paying the ground lease payments) and have a value upon stabilization of $28,300,000.

## EXHIBIT B TO DISCLOSURE STATEMENT
## ASSETS AND LIABILITIES

| Assets | |
|---|---|
| Ground Lease | $6,000,000 |
| New Value Contribution | $2,965,000 |
| **Total** | $8,965,000 |

| Liabilities | |
|---|---|
| Administrative Expense Claim | $75,000 |
| New York City real estate tax and other Liens. | $0.00 |
| Estimated Secured Claim asserted by Ground Lessor | $99,000 |
| Priority Claims under Sections 507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $2,741,619 |
| Debtor's Equity | $3,117,381 |
| **Total** | $6,000,000 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real Property and misc. personal property | $6,000,000 |
| **Total** | $6,000,000 |

| Liquidation Distribution | |
|---|---|
| Administrative Espense Claims | $750,000 |
| New York City real estate tax and other Liens. | $0.00 |
| Estimated Secured Claims asserted by Ground Lessor | $99,000 |
| Priority Claims under Sections 507(a)(3),(4),(5),(6), and (7) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $2,741,619 |
| Debtor's equity | $1,991,619 |
| **Total** | $6,000,000 |

**Note: All claim amounts subject to objection.**