UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                                                    Chapter 11

       73 Empire Development LLC                  Case no. 19-22285

                                  Debtor.
------------------------------------------------------------x

## **REPLY TO OBJECTION TO MOTION FOR DECLARATORY JUDGMENT**

73 Empire Development LLC (the "Debtor"), as and for its reply ("Reply") to the objection of MDL Equipment. Development LLC ("Ground Lessor") to the Debtor's motion for declaratory judgment ("Motion") that the ground lease ("Ground Lease") dated December 16, 2013 on the real property at 73 Empire Boulevard, Brooklyn, New York 11225 (the "Property") is not a true lease, but rather a sale for term of years, respectfully represents as follows:

## **BACKGROUND**

1. In its Motion, the Debtor first argued that the determination of rights under a federal statute is a matter of federal law. *E.g., Butner v. United States*, 440 U.S. 48, 55 (1979); *accord Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 451 (2007). As explained in *City of Olathe, Kansas v. KAR Dev. Assoc., L.P. (In re KAR Dev. Assoc., L.P.)*, 180 B.R. 629, 636 (D. Kansas 1995), federal interests warrant application of a federal rule to determine whether a transaction is a "lease" under section 365(d). *See KAR Dev.*, 180 B.R. at 638.

2. The Debtor then argued that the weight of authority holds that the determination of whether a "lease" exists for purposes of section 365 focuses on the economic substance of the agreement rather than its form or label. *See Int'l Trade Admin. v. Rensselaer*

*Polytechnic Ins.*, 936 F.2d 744, 748 (2d Cir. 1991); *City of San Francisco Market Corp. v. Walsh (In re Moreggia & Sons, Inc.)*, 852 F.2d 1179 (9th Cir. 1988);.*Liona Corp., N.V. v. PCH Assoc. (In re PCH Assoc.)*, 804 F.2d 193, 198 (2d Cir. 1986); *KAR Dev.*, 180 B.R. 629, 636. The Court must examine "all relevant circumstances and the economic substance of the agreement to discern the true nature of the instrument." *In re Integrated Health Servs., Inc.*, 260 B.R. 71, 75 (Bankr. D. Del. 2001) (*citing PCH Assoc.*, 804 F.2d at 199).

    3.    The Debtor argued further that application of the economic substance test requires consideration of numerous factors, including: (a) whether the parties intended to enter into a typical landlord/tenant relationship; (b) whether the "rent" was prepaid; (c) whether the "rental" payments bore a relationship to the market value of the land; (d) the term of the "lease," (e) whether the lessor could recognize any benefit from appreciation in the value of the land; (f) whether the obligations of the tenant are those normally associated with ownership; (g) the purpose of the lease in light of the entire transaction; and (g) whether the purposes underlying section 365 would be served by including the agreement within its provisions. *See Moreggia*, 852 F.2d at 1184-86; *PCH Assoc.*, 804 F.2d at 200-01; *PCH Assoc. v. Liona Corp. N.V.*, 55 B.R. 273, 277-78 (Bankr. S.D.N.Y. 1985); *Integrated Health Servs.*, 260 B.R. at 76; *KAR Dev.*; 180 B.R. at 639; *Hotel Syracuse, Inc. v. City of Syracuse Indus. Dev. Agency (In re Hotel Syracuse, Inc.)*, 155 B.R. 824, 838-39 (Bankr. N.D.NY. 1993).

    4.    Applying those factors, the Debtor demonstrated that the Ground Lease contains an combination of features, including a 49-year term, below market rent, an obligation to construct a large commercial building in the first years of the Lease, and triple net obligations

on the Debtor for all Property related expenses -- features usually associated with outright ownership.

**REPLY**

5. Against this background, the Ground Lessor argues that if a ground lease is a "typical" ground lease, it cannot be recharacterized. But the Ground Lessor identified no safe harbor for 'typical' ground leases in the Bankruptcy Code or the case law because none exists. Rather, in each of the cited cases, the courts compare the subject ground lease to typical lease – not to a typical ground lease – based on the enumerated factors above to determine whether the ground lessor is entitled to the extraordinary protections the Bankruptcy Code gives to a typical landlord under section 365.

6. Next, the Ground Lessor relied heavily on the Debtor's Supreme Court pleadings seeking a Yellowstone injunction, assuming that the Debtor had an obligation in that context to argue that the Ground Lease is not a true lease. By way of background, the Ground Lessor had previously refused the Debtor's demand to bring in new members with a net worth exceeding $300,000,000 to fund construction, and then served a 30-day notice to cure defaults, the primary default being the failure to complete construction.

7. Recharacterization of a lease under section 365 of the Bankruptcy Code is not a remedy for a lease default notice and thus irrelevant to a *Yellowstone* proceeding. The Debtor could not raise the issue before it filed this case. After the Debtor filed this case, the Bankruptcy Court assumed jurisdiction over the Lease characterization issue and lifted the stay to permit the State Court proceedings and reserved jurisdiction for the relief herein. Thus, the Debtor properly proceeded in State Court post-petition assuming, for the sake of that litigation

only, that the Lease is a true lease. Either way, the Ground Lessor cited nothing in the Bankruptcy Code or in case law to support a waiver or estoppel argument because no such authority exists.

8. In its objection, the Ground Lessor does not deny that the 49-year term of the Ground Lease and the Debtor's triple net obligations under the Ground Lease are factors that weigh in favor of a finding that the Ground Lease is not a true lease.

9. The Ground Lessor cited *Westship, Inc. v. Trident Shipworks, Inc.*, 247 B.R. 856 (M.D. Fla. 2000) for the argument that in addition to those factors the Debtor must have an option to purchase for the Ground Lease to be recharacterized. In *Trident*, however, the ground lease only had a ten-year term. *Trident* at 859. Thus, the lease term was not a factor weighing in favor of recharacterization *absent* an option to purchase. Since the Ground Lease here has a 49-year term, there is no need for an option to purchase to make up for the absence of a long-term lease.[1] Again, the Ground Lessor cited no other cases where an option to purchase was required for recharacterization.

10. In *In re George,* 177 F.3d 885, 888 (9th Cir. 1999)*,* another case the Ground Lessor cited, the Ninth Circuit relied on the lower court finding that the lease rent was fair market rent and refused to recharacterize primarily on that basis.

11. The Debtor's Motion demonstrates that unlike *George*, here, the rent is far below market for a typical lease because of the construction obligation. When combined with

---

[1] Here, although there is no option to purchase as the Ground Lessor points out, the Debtor has a right of first refusal, indicating that the Debtor has the right to acquire complete ownership rather than just ownership for a period of years, should the Ground Lessor decide to sell during the Ground Lease Term.

4

construction obligation, the rent is front loaded in the early years of the Lease consistent with *Int'l Trade Admin. v. Rensselaer Polytechnic Ins*. Since the Ground Lease here has below market rent and front-loaded construction obligations, it should be recharacterized as an ownership interest.

12. At paragraph 34 of its Objection that the Ground Lessor attempts to trivialize the Debtor' construction obligation, stating that the improvements "do not benefit MDL other than to insure (sic.) that the Debtor will be able to pay the ground rent" and should not, therefore, be considered pre-paid rent. This statement is contradicted by the Ground Lease itself, and the fact that the eviction is predicated on the Debtor's failure to build a building (upon 30 days), notwithstanding the Debtor's payment of rent.

13. The Ground Lessor further attempted to rebut the Debtor's below market rent analysis with an expert report by Cushman & Wakefield. The Cushman & Wakefield analysis, however, does not all that inconsistent with the Debtor's analysis. Cushman & Wakefield merely concluded that the Ground Lease is not atypical of ground leases generally. But again, there is no safe harbor for ground leases. The test is whether the ground lease, even if typical of other ground leases, is more like an ownership interest than a lease entitled to the protection of section 365 of the Bankruptcy Code. Indeed, the case law demonstrates that a typical ground lease can be recharacterized. Avison Young has provided a supplemental opinion annexed hereto explaining further why that the Ground Lease should be recharacterized.

14. In summary, the Debtor does not deny that when executing the Lease, the parties intended to enter into a ground lease. But the Ground Lease terms equate to an ownership interest under Second Circuit authority, and the Landlord, therefore, is not entitled to the

extraordinary protections and priority in payment provided to landlords by section 365 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion and grant such other relief as may be just and proper.

Dated: New York, New York
July 18, 2019

                               **BACKENROTH FRANKEL & KRINSKY, LLP**
                               **Attorneys for Debtor**

                 By:     s/Mark Frankel
                           800 Third Avenue
                           New York, New York 10022
                           (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                          Chapter 11

    73 Empire Development LLC                       Case no. 19-22285

                        Debtor.                     **VERIFICATION**
------------------------------------------------------------x

    David Goldwasser, under penalty of perjury, states as follows: I am the authorized signatory of GC Realty Advisors, LLC, as Managing Member of the above-captioned Debtor. I have reviewed the annexed pleading, and the facts contained therein are true to the best of my knowledge, information and belief.

Dated: New York, New York
         July 18, 2019

                                                      s/David Goldwasser
                                                      _____



1166 Avenue of the Americas
15th Floor
New York, NY 10036

avisonyoung.com



July 18, 2019

Mark Frankel
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, Floor 11
New York, New York 10022

Mr. Frankel,

We were asked to review and respond to the Expert Report prepared by Cushman and Wakefield in the 73 Empire Development, LLC Chapter 11 Matter.

The Background section of the report states that the report responds to the statement that "the Ground Lease is not a true market lease but a "sale for a term of years."  Based on my expertise and experience, the term "sale for a term of years" is not one used in New York real estate. As set forth below, we conclude that the Ground Lease is a true market lease."

Although labeled a lease, the issue is whether the Ground Lease is not a typical lease such as a lease for a store, building, or apartment.

The Summary of Opinions does not, therefore, address whether the Ground Lease Payments are market payments.  Cushman agrees with the value estimates of between $6 million and $7 million.  We maintain that the ground lease payments on this property, which already had a building on it, is less than the rents the owner could have obtained for the property, which includes the building along with the income being much higher than what a ground lease income is.

The Market Rent section, states that the rent is in fact a market rent for this property and falls within normal range.  The report ignores the fact that the market rent is based on the 30,000 square foot development value, not the 60,000 square foot development value.  This bolsters the position that there is an under market rent on the building in today's market.

In the Other Notable Ground Lease Terms section, the report states, "Ground tenants typically lease a property as a way to secure long-term control of the asset in the hopes of improving the property and benefiting from the leasing of the property to space tenants.  A ground tenant intends to recoup its construction costs along with an acceptable risk-adjusted rate of return over the term of the lease.  Improvements on the site at the end of the lease always revert back to the fee owner of the property, as they do here under the Ground Lease."

With this Ground Lease, the long term control being asserted is the basis for "sale for a number of years" analysis.  The report further states that the Ground Lease requires a large investment into the construction of the proposed building which is made by the lessee.  The improvements revert back to the owner.  This is different than a typical lease even though it is typical ground lease.  In a typical lease, the value of the property increases due to the economic terms of the lease, not the investment made.



In a ground lease, the value of the land is substantially increased by the construction of an office building, apartment building, store, etc.  That investment can be characterized as prepaid rent.  In the event the money was invested into the property beforehand by the landlord, the rent would be higher.  This is similar to a typical office, store, commercial lease that requires an investment in the space to have it ready for the tenant.  The monies if invested by the landlord bring up the rent, but if invested by the tenant, reduce the rent.  In effect the investment into the newly to be built property acts as prepaid rent in that fashion.

In the Comments to FIA Report section, Cushman correctly understands that there is a difference between ground lease value and market rents in the area.  Cushman state that the two types of rent are different based upon a ground lease and smaller leases.  This is due to leases having different characteristics and not all being equal.  The building on this site could have been rented by the owner at the market rent for smaller units, which would exceed the Ground Lease rent.  In fact, there was a proposed lease with Dollar Tree Stores and 73 Empire Development, LLC for 9850 square feet of the 30,000 square foot building that would have brought in a starting rent of $310,000 per year using the existing building, not a new building. If you multiply that by 3 as this is one third of the building, it would easily be over $900,000 of yearly rent on the current property that could have been achieved by the landlord with the existing building. The Ground Lease rent is not below market for a ground lease because the Ground Lease requires a large investment in the property by the lessee.

Avison Young markets and advises on many ground lease transactions.  We also have a commercial leasing department.  Notably these are two totally different departments.  One works on what is "akin" to sale to a developer and is actually marketed by the Investment Sales Teams here, ours being one of them.  The paperwork, contract negotiations, background checks, viability of the developer, financial requirements and all other items associated with these transactions are very time consuming and specialized just as much as the actual sale of a property.  The Leasing Brokers spends their time advertising spaces for rent and then take an application, send to the owner and negotiate terms of a lease.  These two teams could not be further apart from each other in their approaches to their respective deals and marketing.

The ground lease team and the investment sale team would both agree that a ground lease and a rental lease are materially different.  When an eviction is called for on a business that has a rental lease, they can move their business.  But if there is an eviction on a ground lessee they cannot move their building.

The points made above are there to illustrate that there is a major difference in a lease versus a Ground Lease, which in fact make the Ground Lease more of a function of financing the acquisition of the land for a term of years by paying payments to the landlord at a rate of return on the value of the land which are similar in nature to mortgage payments for the same value. Here in a Ground Lease you must make your "equity contribution" in the form of construction investment, so that the actual "Loan to Value" of the Ground Lease amounts to what would be a market level LTV for a mortgage on a property and not a 100 percent financing.



While the actual legal terms on all of the Ground Lease and finance terms are in the form of lease and lease related terms, and applicable state laws, the actual application and practice associated with a Ground Lease could not be more different than a rental lease and at the same time could not be any more similar to a Sale or Joint Venture of a property.

Respectfully yours,

Brandon Polakoff
Director – Tri-State Investment Sales
P: 212-230-5998
E: [Brandon.Polakoff@AvisonYoung.com](mailto:Brandon.Polakoff@AvisonYoung.com)