UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IN RE:  73 EMPIRE DEVELOPMENT LLC,   :   Case No. 19-22285 (RDD)
                                                                            :
                                                                            :   **AFFIDAVIT OF**
                                                                            :   **KAREN S. FRIEMAN**
                                                                            :   **IN SUPPORT OF MOTION**
                              Debtor.             :
------------------------------------------------------------x

STATE OF NEW YORK    )
                                : ss.:
COUNTY OF NEW YORK  )

      KAREN S. FRIEMAN, being duly sworn, deposes and says:

1.     I am a member of Stern Tannenbaum & Bell LLP, counsel for MDL Equipment Corp. ("MDL").  I have personal knowledge of the facts set forth herein.[1]

2.     MDL respectfully submits this motion seeking an order holding Debtor in contempt for its failure to comply with the order of this Court entered on July 10, 2019 (the "July 10 Order") and, as a result, directing Debtor to: (i) immediately comply with the July 10 Order; and (ii) reimburse MDL for its reasonable attorneys' fees and costs incurred in this case, or at least the fees and costs incurred in this motion and in connection with Debtor's motion which resulted in the July 10 Order.

3.     In addition, this motion seeks a declaration that as a result of Debtor's wrongful actions in defiance of the July 10 Order and its failure to comply with the condition therein for an extension of its time to assume or reject the Lease, Debtor is deemed to have rejected the Lease and must immediately surrender possession of the Premises to MDL.  Further, or in the alternative, MDL seeks a declaration that as a result of the recent decision by the New York

---

[1] Debtor 73 Empire Development LLC (the "Debtor") was the tenant pursuant to the lease dated as of December 16, 2013 (the "Lease") between it and MDL, as landlord, for the land and building at 73 Empire Boulevard, Brooklyn, New York (the "Premises").

00075657.docx

Supreme Court (described in greater detail below) confirming that Debtor materially breached the Lease beyond all applicable notice and cure periods, as a result of which the Lease terminated by its terms, the Lease is not part of the Debtor's estate.

A. Debtor Violated the July 10 Order

4.   In its July 10 Order, this Court granted Debtor's motion to extend its exclusive periods (the "Extension Motion") including by extending Debtor's time to assume or reject the Lease through and including September 19, 2019. However, that relief was expressly conditioned on:

> …receipt by MDL from the Debtor, on or before June 28, 2019, of a money-good check in the amount equal to all postpetition Basic Rent and Additional Rent due under the Ground Lease for the period commencing on February 21, 2019 and through June 28, 2019, including but not limited to real estate taxes, and upon Debtor's timely payment to MDL on a monthly basis, beginning on July 1, 2019 and thereafter on the first day of each subsequent month, of Basic Rent and Additional Rent due under the Ground Lease…

(Exhibit A; see also Doc. 33.) Debtor willfully has failed to comply with this plain directive of the Court.

5.   On June 28, 2019, Debtor delivered to my office a check in the amount of $140,476.19, and on that same day I requested the basis for Debtor's calculation. Upon receipt and review of that calculation from Debtor, I advised Debtor that its calculated amount of Basic Rent was incorrect as it failed to take into consideration the increase in rent under the Lease beginning in April, 2019. (Exhibit B.) On July 1, 2019, I more specifically advised Debtor that it still owed a total of $10,000 for Basic Rent for April, May and June, 2019; that it now also owed July Basic Rent; and, that it had failed to pay Additional Rent in the form of real estate taxes in the amount of $52,429.92. (Exhibit C.)

6.   No additional funds were received in response.

7. On July 11, 2019, I emailed Debtor's counsel to reiterate that we had not received July rent or the other amounts discussed in paragraph 5, supra. (Exhibit D.)

8. Finally, on about July 17, 2019, Debtor delivered a check made payable at MDL's request to this firm in the amount of $13,334, again without any explanation of its calculation (the "July 17 Check"). On July 18, 2019, I emailed Debtor stating that I assumed that Debtor was attempting with that check to correct the prior underpayment of April, May and June Basic Rent ($3,333.34/month), and to pay an additional $3,333.34 "underpayment" with respect to July, 2019 Basic Rent. I pointed out, however, that as of that date no payment had been received for July Basic Rent despite this Court's July 10 Order requiring that rent be received on the first of the month. In other words, $36,666.67 was due on July 1, 2019 with respect to Basic Rent for July, 2019. On July 18, 2019 – seventeen days after payment was required to be made – Debtor paid only $3,333.34. I also reiterated in my email that the Additional Rent item for real estate taxes still had not been received although ordered by this Court. (Exhibit E, pp. 2-3.)

9. On or about July 19, 2019, Debtor delivered a further check to my office in the amount of $33,000 (the "July 19 Check"). (Exhibit F.) This payment, as I advised Debtor by email dated July 23, 2019, brought the total (tardily) paid for July rent to $36,333.34, $333.33 short of the amount due. In addition, I noted again that Debtor continued to fail to pay real estate taxes in violation of this Court's July 10 Order. (Exhibit E, pp. 1-2.)

10. Without prejudice, we deposited July 17 Check and the July 19 Check on behalf of our client. At that time, in contravention of the July 10 Order, Debtor owed MDL approximately $52,763.25 ($52,429.92 for real estate taxes and $333.33 with respect to July Basic Rent).[2] Debtor's failure to comply with the July 10 Order was shortly to be amplified.

---

[2] We also advised Debtor of an additional $200 in Additional Rent due with respect to violations on the Premises. (Exhibit E, pp. 1, 7-8.)

11. On the morning of July 30, 2019, I emailed Debtor reminding it that rent was due on August 1, 2019, and that the additional amounts described in paragraph 10, supra, were also still outstanding. (Exhibit E, p. 1.) Unbeknownst to MDL at that time, on July 19, 2019 and on July 22, 2019, Debtor had stopped payment on the July 17 Check and the July 19 Check. (Exhibits G and H.)

12. This wrongful action by Debtor coincided with (and/or apparently anticipated) this Court's July 22, 2019 denial from the bench of Debtor's motion for a declaration that the Lease was not a "true lease" under the Bankruptcy Code and its declaration that the Lease was, in fact, a "true lease." The Court's decision was memorialized in the Court's order entered on August 2, 2019. (Doc. 39.)

13. We received notice from our bank of the stoppage of the two checks later on July 30, 2019 and I immediately wrote to Debtor's counsel demanding payment. (Exhibit I.) However, despite our numerous demands for payment in conformity with the July 10 Order, no payment has been received: (a) replacing the July 17 Check or the July 19 Check (totaling $46,334.00); (b) for Additional Rent amounts including, but not limited to, $52,429.92 due for real estate taxes; (c) for the $333.33 owed for July Basic Rent; or (d) for August Basic or Additional Rent.

14. It is respectfully submitted that as a result of Debtor's wrongful actions, it should be held in civil contempt, compelled to comply, and required to reimburse MDL for its attorneys' fees and costs of this motion, the Extension Motion, and, indeed, this entire case.

15. It is well settled that bankruptcy courts are vested with the inherent authority to enforce compliance with their orders through the issuance of civil contempt orders. In re Chief Exec. Officers Clubs, Inc., 359 B.R. 527, 533-34 (Bankr. S.D.N.Y. 2007); see also 11 U.S.C. §105(a); Fed. R. Bankr. P. 9020. "[T]he power to punish for contempt is inherent in all courts;

its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice." In re Chief Exec. Officers Clubs, Inc., 359 B.R. at 534, quoting Ex parte Robinson, 86 U.S. 505, 510 (1874).

16.     A finding of contempt is appropriate here because the July 10 Order is clear and unambiguous, Debtor's non-compliance is irrefutable and demonstrated by the clear and convincing evidence above, and Debtor has not attempted to comply in a reasonable manner. See In re Lehman Bros. Holdings Inc., 526 B.R. 481, 496 (S.D.N.Y. 2014), as corrected (Dec. 29, 2014), aff'd sub nom. In re Lehman Bros. Holdings, Inc., 645 F. Appx. 6 (2d Cir. 2016); In re Ramos, 2013 WL 5461859, at *1 (Bankr. S.D.N.Y. Oct. 1, 2013) (Drain, J.); In re Chief Exec. Officers Clubs, Inc., 359 B.R. at 535.

17.     Moreover, although it is not a pre-requisite to a finding of contempt that the Debtor's action have been in bad faith or willful, In re Chief Exec. Officers Clubs, Inc., 359 B.R. at 535, it is clear that Debtor's contempt was willful since it had actual notice of the clear order, could have been complied with it, failed to seek a modification of the order, and did not make a good-faith effort to comply. See Bear U.S.A., Inc. v. Kim, 71 F. Supp. 2d 237, 249 (S.D.N.Y. 1999). In fact, by stopping payment on the July 17 Check and the July 19 Check, Debtor intentionally reneged on its own earlier insufficient efforts to comply.

18.     Since Debtor's contempt of this Court order is clear, the Court should impose appropriate remedies and sanctions. "The purpose of civil contempt is to compel a reluctant party to do what a court requires of him . . . Civil contempt sanctions may also compensate for any harm that previously resulted." In re Chief Exec. Officers Clubs, Inc., 359 B.R. at 534 (citations omitted). "Federal courts have broad discretion to fashion remedies as equity requires,

to ensure compliance with their orders." Cordius Trust v. Kummerfeld Assocs. Inc., 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009); In re Chief Exec. Officers Clubs, Inc., 359 B.R. at 542.

19.    It is respectfully submitted that as a sanction for its contempt of this Court's July 10 Order, Debtor should be required to make all the payments required by the July 10 Order and to reimburse MDL for its attorneys' fees and costs in this case, or, at the very least, the costs and fees incurred in this motion and in the Extension Motion which culminated in the July 10 Order which Debtor has disobeyed. See Andre Matenciot, Inc. v. David & Dash, Inc., 422 F. Supp. 1199, 1211-12 (S.D.N.Y.1976); In re Ramos, 2013 WL 5461859 at 1-2.

20.    Further, the July 10 Order conditionally extended Debtor's exclusive periods including by extending its time to move to assume or reject the Lease to September 19, 2019. Debtor wholly failed to satisfy the express condition for this extension – the payment of post-petition rent and additional rent. Therefore, Debtor's time to move to assume the Lease should be deemed to have run without Debtor moving to assume the Lease and the Lease should be deemed rejected.

21.    Manhattan King David Rest. Inc. v. Levine, 154 B.R. 423 (S.D.N.Y. 1993), is on point. There, following the debtor/tenant's failure to pay pre- and post-petition rent, the Bankruptcy Court lifted the automatic stay to permit the prosecution of several state court actions against the debtor arising from the parties' alleged leases. When debtor moved to assume the leases at issue, the Court adjourned the motion on the express condition that debtor pay post-petition rent prior to the hearing on its motion absent which the motion to assume would be deemed denied and the lease deemed rejected. Debtor failed to make payment and the District Court affirmed the Bankruptcy Court's order deeming the lease rejected. Id. at 429. See also In re Cobham Enterprises, Inc., 72 B.R. 779, 783 (S.D.N.Y. 1987) (affirming holding of the Bankruptcy Court that debtor's default resulted in the deemed rejection of the lease at issue).

22. So too here it is respectfully submitted that this Court should declare that the Lease is deemed rejected and that Debtor must immediately surrender possession of the Premises to MDL. See Manhattan King David, 154 B.R. at 429; 11 U.S.C. § 365(d)(4); N.Y. Prac, Landlord and Tenant Practice in New York § 20:379.3.

B. In any Event the Lease has Terminated

23. In addition, the Supreme Court has now determined that Debtor breached the Lease beyond the applicable cure period which expired in December, 2018. Therefore, the Lease terminated according to its terms prior to the filing of this bankruptcy case.

24. As this Court is aware from prior proceedings herein, on or about May 3, 2018, some nine months before this case was filed, following service upon Debtor by MDL of a Notice of Default pursuant to the Lease, Debtor filed an action in the Supreme Court, Kings County (the "Supreme Court") titled 73 Empire Development LLC v. MDL Equipment Development LLC, Index No. 509099/2018 (the "Supreme Court Action"), contesting the noticed defaults and seeking a Yellowstone injunction tolling its time to cure the same. MDL served counterclaims in the Supreme Court Action seeking a declaration that Debtor had breached the Lease as well as damages and attorneys' fees arising from Debtor's defaults.

25. By order entered October 11, 2018, the Supreme Court denied Debtor's motion for a Yellowstone injunction, holding, inter alia, that "there is no dispute" that Debtor defaulted on its obligations under the Lease to timely improve the Premises. (Doc. 11-3.) On December 7, 2018, the Appellate Division, Second Department denied Debtor's subsequent motion for a stay of the applicable cure period under the Lease. (Doc. 11-4.) As a result of that denial – from which Debtor sought no further relief – Debtor's time to cure the noticed defaults expired on

---

[3] As noted above, these arguments are without prejudice to MDL's position, also set forth above, that the Lease terminated before the filing of this case such that there is nothing for Debtor to assume or reject.

December 17, 2018, prior to this bankruptcy filing, without Debtor having cured the defaults, and the Lease thus terminated by its terms.

26.     MDL therefore moved for partial summary judgment in the Supreme Court Action on January 4, 2019, seeking to dismiss Debtor's complaint and for judgment in MDL's favor on its counterclaims arising from Debtor's default in its obligation to timely improve the Premises and its default in its obligation to properly insure the Premises. On or about February 21, 2019, rather than attempt to oppose that motion, Debtor filed this bankruptcy case.

27.     By order entered on May 14, 2019 (the "May 14 Order"), this Court granted MDL's motion for relief from the automatic stay:

> …solely to allow the parties to the [Supreme Court] Action to continue their prosecution and defense of the Action through judgment, but not enforcement of any judgment, including by MDL pursuing its pending motion for summary judgment therein, which motion was stayed by the automatic stay, so as to determine the issues raised therein, including whether the… [Lease], assuming same is a 'true lease,' has terminated…

(Doc. 22.)

28.     Following the May 14 Order, MDL's summary judgment motion and Debtor's cross-motion for partial summary judgment (made with respect only to its default in the provision of insurance) were fully briefed. On August 14, 2019, following oral argument, the Supreme Court ruled from the bench granting MDL's motion for a judgment declaring that Debtor materially breached the Lease provisions requiring the improvement and insuring of the Premises beyond applicable cure periods. The Supreme Court also referred the issue of MDL's claims for the resulting damages and attorneys' fees to a referee. Finally, the Court denied Debtor's cross-motion in its entirety. (The Supreme Court has not yet issued its written order.

However court records confirm the grant of MDL's motion (motion # 2) and the denial of Debtor's cross-motion (motion # 3). (Exhibit J).)[4]

29. The Supreme Court's decision is entitled to <u>res judicata</u> and collateral estoppel effect by this Court. <u>Manhattan King David</u>, 154 B.R. at 428. Because the Lease has terminated due to Debtor's breach, it is not part of Debtor's estate and cannot be assumed.[5]

WHEREFORE, it is respectfully requested that MDL's motion be granted in its entirety and that the Court:

(a) hold Debtor in contempt for its failure to comply with the July 10 Order and order Debtor to (i) immediately comply with the July 10 Order; and (ii) reimburse MDL for its reasonable attorneys' fees and costs in this case, or at least the fees and costs incurred in making this motion and in connection with Debtor's Extension Motion which resulted in the July 10 Order; and

(b) declare that as a result of Debtor's wrongful actions in defiance of the July 10 Order and its failure to satisfy the condition therein for extending its time to assume the Lease, the Lease is deemed rejected by Debtor and Debtor must immediately surrender possession of the Premises to MDL; and/or

---

[4] To the extent it is necessary, MDL will seek further relief from the automatic stay to permit it to enforce any judgment obtained in the Supreme Court.

[5] Even if the Lease were part of Debtor's estate, Debtor cannot cure the defaults under the Lease and therefore cannot meet the precondition for assuming the Lease under Section 365(d)(4) of the Bankruptcy Code.
In addition, given Debtor's failure to comply with the July 10 Order, it is clear that Debtor cannot satisfy the further obligation of Section 365(d)(4) of the Bankruptcy Code that it provide adequate assurance to MDL of its future performance. For these reasons as well, Debtor should be deemed to have rejected the Lease.

(c) declare that as a result of the recent decision by the New York Supreme Court in the Supreme Court Action confirming that Debtor breached the Lease, the Lease is not part of the Debtor's estate; and

(d) grant MDL such other and further relief as this Court deems just and proper.

_____
KAREN S. FRIEMAN

Sworn to before me this
27th day of August, 2019

_____
Notary Public

STEFANIE M. MILLER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02MI6343073
Qualified in New York County
Commission Expires May 31, 2020